**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JUSTIN WASHINGTON, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>    Plaintiff,<br><br>    v.<br><br>GREEN TRIPS INC.<br>    d/b/a GREEN TRIPS, and<br>PETER KIM,<br><br>    Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

---

Plaintiff, JUSTIN WASHINGTON (herein, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, GREEN TRIPS INC. d/b/a GREEN TRIPS (the "Corporate Defendant"), and PETER KIM (the "Individual Defendant" and together with the Corporate Defendant, "Defendants").

## INTRODUCTION

1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from

Defendants: (1) unpaid wages, including overtime, due to a policy of time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.     Plaintiff additionally alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to a policy of time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.     Plaintiff brings individual claims that Defendants unlawfully retaliated against him, in violation of the FLSA and NYLL, and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

4.     Plaintiff additionally individually alleges that, pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), Plaintiff was deprived of his statutory rights due to (i) Defendants' retaliation against Plaintiff, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

5.     Plaintiff further individually alleges that, pursuant to the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), Plaintiff was deprived of his statutory rights due to (i) Defendants' discrimination based on Plaintiff's weight and (ii) Defendants' retaliation against Plaintiff, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

8.    Plaintiff, JUSTIN WASHINGTON, is a resident of New York County, New York.

9.    Defendant, GREEN TRIPS INC., is a domestic corporation authorized to conduct and own business in the State of New York, with an address for service of process located at 1204 149th St, Whitestone, NY 11357, and a headquarters located at 144-77 Roosevelt Avenue, Flushing, NY 11354.

10.    GREEN TRIPS INC. is a corporation that provides ambulatory wheelchair services and professional door-to-door transportation for the elderly as well as the disabled

11.    Individual Defendant PETER KIM is the owner and founder of Corporate Defendant. Individual Defendant PETER KIM exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant PETER KIM personally manages and operates the Green Trips business. Individual Defendant PETER KIM exercises the power to (and also delegates to managers and supervisors the power to: (i) fire and hire employees, supervise and control employee work schedules and conditions of employment, and (ii) determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees of Defendants may complain to Individual Defendant PETER KIM directly regarding any of the terms of their employment, and Individual Defendant PETER KIM would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Individual Defendant PETER KIM exercised functional control over the business and financial operations of Corporate Defendant. Individual Defendant PETER KIM had the power and authority to supervise Plaintiff, FLSA

Collective Plaintiffs, and Class Members, and could reprimand Plaintiff, FLSA Collective Plaintiffs, and Class Members.

12.    Individual Defendant, through and together with Corporate Defendant, owns and operates Green Trips: a business that provides non-emergency ambulette transportation services to clients throughout Queens and Brooklyn, located at 144-77 Roosevelt Ave, Flushing, NY 11354.

13.    At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

14.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including drivers and dispatchers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

16.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek, due to a policy of time-shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.    The claims for relief are properly brought under and maintained as an opt-in collective

action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

### RULE 23 CLASS ALLEGATIONS – NEW YORK

18.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including drivers and dispatchers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

19.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

21.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of

Defendants of (i) failure to pay wages for all hours worked due to a policy of time-shaving; (ii) failing to provide proper wage statements to employees; and (iii) failing to provide proper wage notices to employees.

22.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

23.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action

would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.     Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

    b.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

    c.     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class Members for their work;

d.    Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e.    Whether Defendants paid Plaintiff and Class Members the proper compensation for all hours worked under the NYLL;

f.    Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

g.    Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws; and

h.    Whether Defendants provided proper wage and hour notice, at date of hiring and with each change in pay rate thereafter, to all non-exempt employees, in their native language, per requirements of the NYLL.

## STATEMENT OF FACTS

**Background of Plaintiff's Employment with Defendants**

26.    On or around May 2, 2023, Plaintiff JUSTIN WASHINGTON was hired by Defendants to work as a Driver for Defendants' Green Trip business located at 144-77 Roosevelt Avenue, Flushing, NY 113554. Plaintiff was employed by Defendants until or around January 8, 2024.

27.    Defendants provide ambulatory wheelchair services and professional door-to-door transportation for the elderly as well as the disabled.

28.    Throughout his employment, Plaintiff was scheduled to work six (6) days per week, Mondays through Saturdays, for nine and one-half (9.50) hours per day from 9:00 a.m. to 6:30

p.m., for a total of fifty-seven (57) hours per week. FLSA Collective Plaintiffs and Class Members were scheduled to work similar hours.

29.    From the start of his employment until around June 2023, Plaintiff was compensated at an hourly rate of $16.00 per hour. From around June 2023 until the end of his employment, Plaintiff was compensated at an hourly rate of $17.00 per hour. FLSA Collective Plaintiffs and Class Members were compensated at similar hourly rates.

**Plaintiff's Class and Collective Timeshaving Claims**

30.    Throughout Plaintiff's employment, Defendants regularly subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to a policy of timeshaving.

31.    Approximately three times per week during Plaintiff's employment, Defendants forced Plaintiff to sit in the office, off-the-clock, until a trip is assigned to him. During this time, Plaintiff was not allowed to leave Defendants' office. These unpaid hours lasted up to three (3) hours. Defendants required plaintiff to remain present and on-call, in their office, off-the-clock. Defendants only permitted Plaintiff to clock back-in when a trip is assigned to him. FLSA Collective Plaintiffs and Class Members were similarly denied payment for their hours spent on the job waiting for a trip assignment.

32.    Because Plaintiff, FLSA Collective Plaintiffs, and Class Members were on-call, present in their job site, Plaintiff, FLSA Collective Plaintiffs, and Class Members should have been compensated by Defendants for all time spent waiting for a trip assignment.

33.    The nature of Defendants service, and Plaintiff, FLSA Collective Plaintiffs, and Class Members jobs is to be available and on-call for the elderly and individuals in need of wheel-chair transportation. Therefore, Plaintiff, FLSA Collective Plaintiffs, and Class Members' presence in

Defendants' offices and their being on-call and available is an essential part of their job requirement and position.

34.    As a result of Defendants' policy of timeshaving, Defendants' intentionally and willingly failed to pay Plaintiff for up to nine (9) hours per week. FLSA Collective Plaintiffs and Class Members were not paid for similar amounts of hours for the same reason.

35.    Further, because Plaintiff was always scheduled to work approximately fifty-seven (57) hours per week, these uncompensated hours from Defendants' timeouts were always unpaid overtime hours. FLSA Collective Plaintiffs and Class Members were similarly owed overtime wages for these timeshaved hours.

36.    Plaintiff opposed Defendants' failure to pay Plaintiff's overtime wages owed for sitting through Defendants' timeouts, as Plaintiff believed he should have been paid for these hours. However, Defendants always ignored Plaintiff's complaints and continued their timeshaving policy, and began to retaliate against Plaintiff through weight discrimination, as detailed below..

37.    Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class Members, due to a policy of time-shaving, in violation of the FLSA and the NYLL.

**Plaintiff's Class WTPA Violation Claims**

38.    In violation of the Wage Theft Protection Act ("WTPA") —incorporated into NYLL— Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff at the beginning of his employment with Defendants.

39.    Defendants further violated the WTPA by failing to provide Plaintiff with accurate wage statements, because wage statements that do not reflect the actual number of hours worked

by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

40.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

41.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff. Defendants' conduct actually harmed Plaintiff. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived Plaintiff of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's

rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

42.     Had the wage statements Defendants provided to Plaintiff accurately listed the total number of hours Plaintiff actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff to vindicate his rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

43.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff. This delayed payment caused Plaintiff to struggle to pay bills and other debts.

44.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages

45.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

46.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at

---

as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

*2 (S.D.N.Y. July 14, 2022)).

47.    Here, it is clear that Defendants' failure to provide Plaintiff with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff. That, in turn, would have increased Plaintiff's entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

48.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

49.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff rather than merely misreporting his income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiff lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

14

50.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

51.    Here, the problem is not merely challenging but insurmountable. Plaintiff cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff. The problem, rather, is that Plaintiff was underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

52.    Defendants knowingly and willfully operated their business with a policy of failing to properly provide Plaintiff and the Class Members with proper wage notices in statutory compliance with the NYLL.

53.     Defendants knowingly and willfully operated their business with a policy of failing to properly provide Plaintiff and the Class Members with proper wage statements in statutory compliance with the NYLL.

**Plaintiff's Individual Weight Discrimination and Retaliation Claim**

54.     Throughout his employment, Plaintiff suffered from Defendants' discrimination based on his weight.

55.     During the relevant period, Plaintiff weighed more than Individual Defendant PETER KIM.

56.     As a result of Plaintiff's complaints about Defendants' above FLSA and NYLL violations, Individual Defendant PETER KIM began to frequently make discriminatory remarks to Plaintiff based on Plaintiff's weight. Specifically, after Plaintiff's complaints, Individual Defendant PETER KIM regularly told Plaintiff that Plaintiff was "too big" and that Plaintiff "needed to lose weight." Plaintiff opposed this discriminatory conduct, but instead of stopping it, Individual Defendant PETER KIM instead further retaliated against Plaintiff by making discriminatory remarks against Plaintiff more frequently.

57.     As a result of Defendants' continuous humiliation and retaliatory discrimination, Plaintiff was forced to leave his employment due to constructive termination.

58.     Defendants cruelly and prejudicially fostered a hostile work environment due to Plaintiff's weight and ended up with his termination. Because of Defendants' discriminatory and retaliatory conduct, Plaintiff suffered physical discomfort and emotional humiliation and abuse while working for Defendants.

59.     Defendants knowingly and willfully operated their business with a policy of discriminating and retaliating against Plaintiff on the basis of his weight.

60.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class Members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

61.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

62.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

63.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

64.    At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

65.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to time-shaving.

66.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

67.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA

as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

68.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

69.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

70.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, overtime wages and liquidated damages.

71.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

### COUNT II

### <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

72.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

73.    At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

74.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members their proper wages, including overtime, due to time-shaving, in direct violation of the NYLL.

75.    Defendants failed to properly notify Plaintiff and Class Members of their overtime rates, in direct violation of the New York Labor Law.

76.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notices, at date of hiring and annually thereafter, as required under the New York Labor Law.

77.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage statements, as required under the NYLL.

78.    Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages, including overtime, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

79.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

80.    As set forth above, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

81.    Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

82.    As alleged herein, Plaintiff complained to Defendants regarding Defendants invalid unpayment of overtime wages and unsatisfactory time-shaving policies. In response to such complaints, Defendants started discriminating against Plaintiff in violation of Section 15(a)(3).

83.   Defendants' retaliatory and discriminatory conduct was in willful disregard of the provisions of the FLSA.

84.   As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided under the FLSA.

## COUNT IV

## RETALIATION UNDER THE NEW YORK LABOR LAW

85.   Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

86.   At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

87.   As alleged herein, Plaintiff complained to Defendants regarding Defendants invalid unpayment of overtime wages and unsatisfactory time-shaving policies. In response to such complaints, Defendants started discriminating against Plaintiff in violation of Section 215 (a).

88.   Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or  limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

89.   Defendants' conduct was in willful disregard of the provisions of the NYLL.

90.   As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to

be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL.

## COUNT V

### VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

91.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

92.    The New York State Human Rights Law prohibits retaliation on the basis of an employees' weight.

93.    At all relevant times, Plaintiff was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

94.    Defendants operated a business that retaliated against Plaintiff in violation of Section 296(1)(a).

95.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of the NYSHRL.

96.    As a result of Defendants' unlawful retaliatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

97.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

98.    As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past earnings, mental anguish, pain and suffering, and emotional distress. Plaintiff seeks judgment

in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

## COUNT IV

### <u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107</u>

99.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

100.    The New York City Human Rights Law prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an employees' weight.

101.    At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

102.    Defendants operated a business that discriminated and retaliated against Plaintiff in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his weight in various ways, including but not limited to:

      a.    Creating and fostering a hostile work environment based on Plaintiff's weight, and

      b.    Verbally offending Plaintiff through usage of derogation against his weight.

103.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the NYCHRL.

104.    As a result of Defendants' unlawful discriminatory and retaliatory practices, Plaintiff sustained injury, including economic damages, past wages, physical and emotional distress.

105.   The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

106.   As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, pain and suffering, and emotional distress. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid wages, including overtime, due to time-shaving, due under the FLSA and the NYLL;

d.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

e.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, pursuant to the New York Labor Law;

f.  An award of statutory penalties, pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g.  An award of front pay, compensatory damages, and punitive damages due under the NYSHRL;

h.  An award of front pay, compensatory damages, and punitive damages due under the NYCHRL;

i.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 16, 2024                                          Respectfully submitted,
       New York, New York                       By:    */s/ C.K. Lee*
                                                         C.K. Lee, Esq. (CL 4086)

                                                         **LEE LITIGATION GROUP, PLLC**
                                                         148 West 24th Street, Second Floor
                                                         New York, NY 10011
                                                         Tel.: 212-465-1188
                                                         Fax: 212-465-1181
                                                         *Attorneys for Plaintiff,*
                                                         *FLSA Collective Plaintiffs,*
                                                         *and the Class*